[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Garguilo Construction Company, Inc. (hereinafter Garguilo) commenced this action against the defendant James John Romeo Consulting Engineering P.C. (hereinafter Romeo) seeking to recover damages for alleged acts of negligence.
The evidence has established that RMC Development, LLC was the owner of property in 1997 located in Stamford, Connecticut. The owner proposed to construct a warehouse building on the property, and it contracted with Romeo to provide engineering services for the project. The services to be provided by Romeo related to Structural Design, HVAC Design/Humity Control, Plumbing Design and Electrical Design, as well as site inspection, and to review construction documents. The owner then hired Konover Construction Corporation (hereinafter Konover) as the general contractor for the project to be known as the Davidoff Warehouse. Konover then entered into agreements with various subcontractors to provide the construction services. On or about June 5, 1998, Garguilo entered into a subcontract with Konover which related to the installation of the concrete which was to be provided by Konover. Garguilo was to construct the footings, walks, and flat work for the floors. The design mix of the concrete which Konover supplied to Garguilo was established by the OG Industries, Inc. The engineers for OG created the mix design to meet the requirements of the American Concrete Institutes standards for 3000 PSI and 4000 PSI concrete. The mix design included an air entrained agent. The concrete mix design was based upon the construction documents furnished by Konover. OG had the mix design of the concrete tested by the Fairfield Testing Labs to verified its strength, slump, wetness, air content, and sand and stone sizes. The testing lab certified it complied with the standards of the American Concrete Institute. Thereafter, OG delivered the concrete to the job site and pumped it to the required locations for Garguilo's employees to finish the installation. The American Concrete Institute required an air entrained agent in the mix because it provided resistance to weather damage which could occur in the area of this project. CT Page 13584
Garguilo under the subcontract was required to provide the equipment to install the concrete in accordance with the plans and specifications provided by Konover the general contractor. During the concrete installation for the floor slabs Bruce Lyon, the supervisor for the plaintiff, complained about the fluidity of the poured concrete. Konover's project supervisor, Chris Kovi, advised Bruce Lyon the design mix could not be changed. Any change had to be approved by Romeo or the Architect for the project. After the refusal to change the mix design the employees of Garguilo requested the drivers who conveyed the concrete to the site to add more water as it was pumped for the floor slabs. In finishing the floors timing was important because of the drying process and the troweling to acquire a proper finish. After the floors had been installed by Garguilo it was discovered that in some areas there was delamination, discoloration, cracking and spalling of the floors. Konover then hired another subcontractor to correct the condition of the floors, and then back charged the plaintiff $150,000.00 to remedy the problem with the floors.
The plaintiff during the course of the trial presented Harry Moss as an expert regarding the composition of the concrete, and his opinion regarding the cause of the problems in the finished floor. The allegations of the complaint allege negligence of the defendant as the Consulting Engineers in the project. In cases of claims of professional negligence expert testimony must be presented as to what "a skilled engineer of ordinary prudence engaged in the same line of business would have exercised in the same or similar circumstances" Matyos v. Minck,37 Conn. App. 321, 655 A.2d 1155 (1940). The issues in this case were technical. The preparation, design and drawings relating to the concrete required technical expertise beyond the ordinary knowledge and experience of a judge. Therefore to prove professional negligence, expert testimony was required. No such testimony was presented.
The plaintiff claims the defendant Romeo provided the mix design of the concrete and the defendant was negligent in the use of an air entrained agent in the concrete which was inappropriate for the floor slabs. He also alleges Romeo failed to review industry standards, and he failed to inform the plaintiff of the employment of air entrained concrete.
Romeo as the Structural Engineer and the Architect were responsible for the specifications for the strength of the concrete, and not the additives of the mix design. The problems with the floors is found to be that they were finished too fast and the entrapped water caused the delamination and it was not caused by the air entrained agent. CT Page 13585
The concrete mix design was prepared by OG Industries, Inc. in accordance with the American Concrete Institute standards. The air entrained agent included in the mix design was provided to OG Industries by The Euclid Chemical Company. The chemicals in the mix design were verified by the engineers of each of the companies involved, as well as the tests performed by The Fairfield Testing Labs. This court therefore finds the defendant Romeo was not negligent as claimed by the plaintiff regarding the mix design of the concrete. The claims of negligence alleged by the plaintiff have not been proven by a fair preponderance of the evidence.
The contract between Garguilo and Konover provided for an initial price of $285,000.00 to be paid to the plaintiff. When Konover back charged the plaintiff for the corrections of the defects in the finished floors, the total sum was $150,000.00. This sum was based upon approximately $142,900.00 to remedy the floor defects. The original price to install all the flat work for the floors was $50,000.00, and the charge back not only exceeded the original cost, but also included the application of epoxy which was not part of the contract price, but it also made the floors better. The plaintiff was coerced to agree to this back charge because of Garguilo's reliance on further work, and it did not represent a reasonable charge to correct the problem. The plaintiff agreed to the back charge although it was not reasonable and it was agreed to by the plaintiff because of other considerations. It is not found to be the damages allegedly sustained by the plaintiff. Therefore damages have not been established by a fair preponderance of the evidence.
For the foregoing reasons judgment shall enter for the defendant James John Romeo Consulting Engineering, P.C.
Howard F. Zoarski, Judge Trial Referee CT Page 13586